IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

GREGORY D. GEWECKE,              )
                                 )
                  Plaintiff,     )          4:09CV3137
                                 )
        v.                       )
                                 )
MICHAEL J. ASTRUE, Commissioner  )          MEMORANDUM AND ORDER
of the Social Security Administration, )
                                 )
                  Defendant.     )
_____)

This is an action for judicial review of a final decision of the Commissioner of the Social Security Administration ("Commissioner").  Filing No. 1.  Plaintiff appeals a final determination of the Commissioner terminating plaintiff's entitlement to disability insurance benefits under 42 U.S.C. §§ 401 et. seq.  Plaintiff began receiving disability insurance benefits as of October 15, 1991.  On March 15, 2002, the Commissioner notified plaintiff that his disability insurance benefits terminated, effective June 1995, because he engaged in substantial gainful activity.[1]  The notice advised plaintiff that because he continued to receive payments between 1995 and 1998, he owed the Social Security Administration $83,412.70 for overpayments.  The Administrative Law Judge ("ALJ") decided adversely to the plaintiff following an administrative hearing on the issues of overpayment and disability termination. Filing No. 13, Social Security Transcript ("Tr.") 15. Following his decision, the ALJ forwarded plaintiff's case to the Social Security Administration's Office of Disability Operations for reconsideration on the issue of overpayment.  Tr. 24.  On May 6, 2009, the Appeals Council denied plaintiff's request for review of the ALJ's decision,

_____

[1]The notice stated that plaintiff's benefits terminated as of June 1995.

rendering the ALJ's decision the Commissioner's final decision. Tr. 6-9. Plaintiff initiated

this civil action for judicial review of the Commissioner's final decision. Plaintiff appeals the

Commissioner's final determination that his disability terminated as of June 1995. This

Court has jurisdiction under 42 U.S.C. §§ 404, 405(g) and 1383(c)(3). After careful review

of the record as a whole, the court finds that the Commissioner's decision to terminate

plaintiff's benefits, effective 1995, was not based on substantial evidence.

## BACKGROUND

Doctors diagnosed plaintiff with multiple myeloma in late 1991. Tr. 53, 55. On June

26, 1992, plaintiff filed an application for disability insurance benefits for a period to

commence on October 15, 1991. Tr. 100-02. Plaintiff received benefits from 1991 through

1998. Tr. 55, 82. On March 15, 2002, plaintiff received a letter from the Social Security

Administration indicating that plaintiff's disability had ended and that he was no longer

entitled to disability insurance benefits. Tr. 73. The letter stated that plaintiff was no longer

entitled to those benefits because he had been performing substantial gainful activity as

of June 1995. Tr. 66, 73. After continuing to issue payments to plaintiff between June

1995 and June 1998, the Social Security Administration now requested repayment in the

amount of $83,412.70. Tr. 82. The Commissioner denied plaintiff's request for

reconsideration on the issues of cessation of benefits and overpayment. Tr. 86, 90.

On November 2, 2005, plaintiff requested a hearing before an ALJ. Tr. 97. On

August 16, 2006, the ALJ independently contacted the County Director for the United

States Department of Agriculture's Hall County Farm Service Agency ("County Director")

seeking information regarding the worth and value of plaintiff's services. Tr. 196. The ALJ

asked the County Director if, in 1995, someone managing a 900 acre farm who made all

2

of the decisions in connection with the farm's operation was worth $500 per month.  Tr. 196.  The County Director said she was unsure, and because she considered herself unqualified to answer, she referred the ALJ to three individuals she described as independent farm managers.[2]  Tr. 196.  One of the two individuals who responded to the same question posed to the County Director stated that "he had no idea." Tr. 198.  The other, Tom Drudig, a unit leader with Hall County and an educator with the University of Nebraska-Lincoln, provided a response.  Tr. 199.

Mr. Drudig first stated that it is possible for a farm manager to make $500 a month working for 62 hours a month at the normal rate of $8.00 per hour.  Tr. 199.  He told the ALJ that it would be reasonable for someone managing a 900 acre farm to work two hours a day for 30 days a month.[3]  Tr. 199.  He commented that farm managers are generally paid on the basis of a percentage of gross earnings, typically between six and nine percent.  Tr. 199.  Using a hypothetical example, he stated that at $2.50 per bushel and a realistic yield of 180 bushels per acre, a farm would yield gross earnings of $450 dollars per acre.  Tr. 199.  A manager's six percent of the $450 would then be $27.00 per acre, and multiplied by 900 for the number of acres farmed would equal $24,300 per year, or $2,025 per month.  Tr. 199.

---

[2]Even though the County Director was uncertain, she stated that "she has ranched all her life, but that she didn't think she would pay that much." Tr. 196.

[3]The court notes that working two hours per day for 30 days per month would be 60 hours of work per month.  60 hours per month at $8.00 per hour would result in $480 per month, not $500 per month.  However, according to the ALJ's contact log documenting his telephone conversation with Mr. Drudig, the ALJ used 62.5 hours as the number of hours in a month required to earn $500 per month.  Tr. 199.

3

On October 24, 2006, plaintiff testified at his hearing that prior to the onset of his disability, he would often work from 9:00 a.m. to 10:00 p.m. Tr. 232. Plaintiff also testified that from the disability onset date in 1991 until 2001 or 2002, he would spend about an hour per day in the fields managing the farm and from one hour to one and a half hours per week taking care of the books.[4] Tr. 230-31, 243. Plaintiff's tax returns for the period beginning with 1991, the year of onset of disability, until 1998, indicate that his farm operated at a loss for four of those eight years.[5] Tr. 106-12. In contrast, for the year prior to, and several years subsequent to that eight year period, plaintiff's tax returns reflect that his farm realized a gain.[6] Tr. 103-05, 113-14, 215-18.

On December 18, 2006, following an administrative hearing, the ALJ decided adversely to plaintiff. Tr. 15. The ALJ found that plaintiff's disability terminated as of June 1995 because of plaintiff's participation in substantial gainful activity as a self-employed farm manager. Tr. 17-24.

---

[4] The court notes that one and one half hours per week equals about 13 minutes per day; one hour per week equals about eight and one half minutes per day. Adding 13 minutes per day of work to the time plaintiff testified to at the ALJ hearing, he would have been dedicating about 1 hour and 13 minutes to the farm each day. This would mean that plaintiff worked about 36.5 hours per month. This does not meet the test for substantial gainful activity.

[5] The net farm profits or losses as indicated on plaintiff's tax returns for the referenced time period are as follows: 1991- $13,298; 1992- $2,797; 1993- $21,998; 1994- <$475>; 1995- $924; 1996- <$11,165>; 1997- <$3,308>; 1998- <$9,759>. Tr. 106-12.

[6] The net farm profits as indicted on plaintiff's tax returns for the referenced time periods are as follows: 1990- $21,778; 1991- $13,298; 1999- $71; 2000- $24,389; 2001- $68,560; 2002- $483; 2003- $23,038; 2004- $16,302; 2005- $17,380. Tr. 103-05, 113-14, 215-18.

4

## FINDINGS OF THE ALJ

The ALJ found that plaintiff engaged in substantial gainful activity based on all three tests prescribed in the Code of Federal Regulations.  Tr. 20-22; *see also* 20 C.F.R. § 404.1575.  Under Test One, (all tests are explained in the Discussion section of this memorandum and order) the ALJ found that it was clear that plaintiff rendered substantial services based on a statement plaintiff submitted to the Social Security Administration. Tr. 20, 121.  The ALJ then found that plaintiff received significant income by adding the depreciation deductions taken by plaintiff back into his countable income.  Tr. 20-21.  Under Test Two, the ALJ found plaintiff's work activity was comparable to that of an unimpaired individual in the same community by attempting to compare plaintiff's net profits in the taxable years of 1995 and 1990.[7]  Tr. 21.  Under Test Three, the ALJ found plaintiff's work activity was clearly worth the $500 per month when considered in terms of its value to the business and the finding that an owner of a 900 acre farm would pay an employee $500 per month to perform such management services.  Tr. 22.

## STANDARD OF REVIEW

A disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1505. A claimant is disabled when the claimant is "not only unable to do his previous work but cannot, considering . . . his age, education and work experience, engage in any other kind of

---

[7]The ALJ referenced plaintiff's tax returns and stated that in 1995, plaintiff had a net profit of $21,998, and that in 1990, the year before the onset date of plaintiff's disability, the farm had a net profit of $21,778.  Plaintiff's actual tax return for the 1995 taxable year indicates that plaintiff had a net income of $924.  Tr. 109.  The amount of $21,998 comes from plaintiff's 1993 tax return.  Tr. 111.

5

substantial gainful work which exists in [significant numbers in] the national economy . . . either in the region in which such individual lives or in several regions of the country." 42 U.S.C. § 432(d)(2)(A). However, if an individual works and the work he or she performs is substantial gainful activity, then the individual is deemed not disabled regardless of his or her medical condition, age, education, and work experience. 20 C.F.R. § 404.1520. This is true "even if the claimant does in fact have an impairment." *Andler v. Chater*, 100 F.3d 1389, 1392 (8th Cir. 1996).

Substantial gainful activity is defined as work activity that is both substantial and gainful. 20 C.F.R. § 404.1572. Work activity is substantial if it involves performing significant mental or physical activities. *Id.* at § 404.1572(a). Work activity is gainful if it is performed, or usually performed, for pay or profit, regardless or whether a profit is realized. *Id.* § at 404.1572(b).

When reviewing a decision to deny disability benefits, the district court does not act as a fact-finder or substitute its judgment for the judgment of the ALJ or the Commissioner. *Bates v. Chater*, 54 F.3d 529, 532 (8th Cir. 1995). Rather, the district court will affirm the Commissioner's decision to deny benefits if it is supported by substantial evidence in the record as a whole. *Eback v. Chater*, 94 F.3d 410, 411 (8th Cir. 1996). Under this standard, substantial evidence means something "less than a preponderance" of the evidence, *Kelley v. Callahan*, 133 F.3d 583, 587 (8th Cir. 1998), but "more than a mere scintilla," *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *accord Ellison v. Sullivan*, 921 F.2d 816, 818 (8th Cir.1990). "Substantial evidence is that which a reasonable mind would find as adequate to support the ALJ's decision." *Brown v. Chater*, 87 F.3d 963, 964 (8th Cir. 1996) (citing *Baumgarten v. Chater*, 75 F.3d 366, 368 (8th Cir. 1996)).

6

In determining whether the evidence in the record as a whole is substantial, the district court must consider "evidence that detracts from the Commissioner's decision as well as evidence that supports it." *Warburton v. Apfel*, 188 F.3d 1047, 1050 (8th Cir. 1999). If the district court finds that the record contains substantial evidence supporting the Commissioner's decision, the court may not reverse the decision because the record also contains substantial evidence that supports a different outcome or because the court would have decided the case differently. *Holley v. Massanari*, 253 F.3d 1088, 1091 (8th Cir. 2001).

**DISCUSSION**

Three tests are used to determine whether a self-employed individual has engaged in substantial gainful activity.[8] 20 C.F.R. § 404.1575(a)(2)(i)-(iii). If the claimant has not engaged in substantial gainful activity under one test, then the Social Security Administration will consider whether the claimant engaged in substantial gainful activity under the other two tests. *Id.* All three tests must be considered before it can be determined that a self-employed individual was not engaged in substantial gainful activity. Soc. Sec. Rul. (SSR) 83-34, 1983 WL 31256, *2. These tests consider the claimant's activities and their value to the claimant's business, not just the claimant's income. 20 C.F.R. § 404.1575(a)(2). The claimant's activities and their value to the business must be considered because, by itself, the amount of income the claimant receives may depend on various factors, including profit-sharing agreements and capital investment. *Id.* However, it is essential under all three tests "that the evidence show not only what the individual's activities have been since the alleged date of disability onset, but also how such activities

---

[8] 20 C.F.R. § 404.1575 was amended in 2006, reordering the numbering of the tests. *See* 71 Fed. Reg. 66854. Former "Test One" is now "Test Two"; former "Test Two" is now "Test Three"; and Former "Test Three" is now "Test One."

compare with those he or she performed before that date." SSR 83-34, 1983 WL 31256, *2.

## A. TEST THREE[9]

Test Three states that an individual has engaged in substantial gainful activity if his or her "work activity, although not comparable to that of unimpaired individuals, is clearly worth the amount shown in [the Earnings Guideline Tables found in] § 404.1574(b)(2) when considered in terms of its value to the business, or when compared to the salary that an owner would pay to an employee to do the work." 20 C.F.R. § 404.1575(a)(2)(iii). The Earnings Guidelines Tables provide the amount of $500 per month for months between January 1990 and June 1999. *Id.* at § 404.1574(b).

Under Test Three, the facts of a given case determine the degree to which worth of services must be evidenced by data from outside authorities. SSR 83-34, 1983 WL 31256, *10. In many instances, it will be unnecessary to document a file in great detail due to a familiarity with local conditions. *Id.* However, "where there is any doubt as to the comparability or worth of services, it will be necessary to obtain evidence in appropriate detail, supplemented as required by opinions from authoritative sources in the community." *Id.* Development of data and evidence must be specific, the lack of conclusive evidence results in a finding that work performed is not substantial gainful activity, and any doubt must be resolved in favor of the impaired individual. *See Downes v. Barnhart*, 289 F.

---

[9]The court considers Test Three first because it is dispositive in this particular case. Under Test One, the Social Security Administration Appeals Council acknowledges that there is merit to treating plaintiff's government subsidy payments as deductible soil bank payments which would mean that the plaintiff did not receive significant income. Tr. 7. The Commissioner concedes that the record is not sufficiently developed in regards to Test Two. Defendant's Answer Brief, Filing No. 20 at 8 n.5.

Supp. 2d 1072, 1074 (S.D. Iowa 2003) (applying current Test Three and finding no substantial evidence on the record as a whole).

The court finds the ALJ's determination that plaintiff engaged in substantial gainful activity under Test Three was not based on substantial evidence in the record as a whole. No data has been developed or documented evidencing the value of plaintiff's services. SSR 83-34, 1983 WL 31256, *10. The only evidence relied upon by the ALJ is Mr. Drudig's responses to the questions posed by the ALJ. Tr. 22, 199. Mr. Drudig's estimates regarding the typical number of hours worked by farm managers were considerably higher than the number of hours worked by the plaintiff. This suggests that plaintiff's actual services were of less value to the actual farm operation than the hypothetical farm manager's services were to the hypothetical farm. The hypothetical farm manager's services just barely met the $500 per month Earnings Guidelines requirement even after the numbers Mr. Drudig provided in response to the ALJ's question appeared to be manipulated upwards to ensure the numbers met the requisite monthly amount prescribed by the Earnings Guidelines. *See supra* note 3 and accompanying text. Finally, the acknowledged inability of the other two independent farm managers to provide accurate information regarding the value of plaintiff's services calls into doubt Mr. Drudig's ability to do so. Mr. Drudig did not testify at trial. Accordingly, no cross-examination occurred. Mr. Drudig did not offer an affidavit regarding his opinion. Mr. Drudig did not talk to the plaintiff or review any actual information or records from the plaintiff or the farm. The only basis for the ALJ's decision are the notes from his conversation with Mr. Drudig that are found in the ALJ's contact log. Tr. 199.

Viewing the record as a whole, there is inconclusive evidence as to the actual value of plaintiff's services. In light of the inconclusive evidence relied upon for finding

substantial gainful activity and the other evidence present in the record detracting from a finding of substantial gainful activity, there is doubt as to whether plaintiff engaged in substantial gainful activity.  As a result, the court finds that the ALJ's decision was not based on substantial evidence in the record as a whole.

### B.  TESTS ONE AND TWO

Test One states that someone has engaged in substantial gainful activity if he or she "render[s] services that are significant to the operation of the business and receive[s] substantial income from the business."  20 C.F.R. § 404.1575(a)(2)(i).  If an individual is not a farm landlord and the business involves the services of more than one person, significant services are rendered when the individual contributes more than half of the total time required for the management of the business.  *Id.* at § 404.1575(b)(1).  An individual receives substantial income if his or her countable income either averages more than the amounts prescribed by the Earnings Guideline Tables in 20 C.F.R. § 404.1574(b)(2), or is comparable to what the individual earned before he or she became disabled or to that of an unimpaired self-employed individual in the same community or similar line of business.  *Id.* at § 404.1575(c)(2).  Countable income is determined by first deducting normal business expenses from gross income to determine net income.  *Id*. at § 404.1575(c)(1).  After determining net income, other expenses, such as unpaid help furnished by family or others, impairment related work-expenses, and soil bank payments if included as farm income, are deducted from net income to determine countable income.  *Id.*  The soil bank payment exclusion "was created for farms which placed only some land in the soil bank conservation program."  *Petersen v. Chater*, 72 F.3d 675, 677 (8th Cir. 1995).  The soil bank program ended in 1965.  *Id.*  Since then, at least one court has found that payments received under a program enacted subsequent to 1965 that were not soil bank payments,

10

but were similar in nature, might need to be excluded from the substantial income equation. *See id.* at 676-77 (refusing to affirm ALJ's decision denying claimant's application for disability insurance benefits under current Test 1 despite receipt of Conservation Reserve Program payments raising claimant's income over substantial income level prescribed in regulations).

Here, as the court has already concluded under Test Three, the ALJ's finding that plaintiff engaged in substantial gainful activity, because he rendered substantial services and received significant income, is not supported by substantial evidence.  Under Test One, the plaintiff needed to receive significant income.  20 C.F.R. 404.1575(a)(2)(i).  Plaintiff has what appears to be a close equivalent to soil bank income.  Even though plaintiff's government subsidies were not soil bank payments which are expressly excluded from countable income in determining substantial income, the Appeals Council acknowledged the merit in treating those payments as deductible soil bank payments.  Tr. 7.  The court agrees.  After deducting the government subsidies from plaintiff's gross income, plaintiff's countable income is less than the amount prescribed in the Earnings Guidelines Tables, and is not comparable to his earnings prior to the onset of his disability.  Tr. 103-14, 218.  As a result, there is no substantial evidence based on the record as a whole suggesting that plaintiff received substantial income sufficient to meet the requirements of Test One.

Test Two states that an individual has engaged in substantial gainful activity if his or her "work activity, in terms of factors such as hours, skills, energy output, efficiency, duties, and responsibilities, is comparable to that of an unimpaired individual" in the same community and in the same or similar business. *Id.* at § 404.1575(a)(2)(ii).  Inconclusive evidence as to comparability based on these factors results in a finding that there has not

11

been substantial gainful activity. SSR 83-34, 1983 WL 31256, *9. Under Test Two, the facts of a given case determine the degree to which the comparability of services must be evidenced by data from outside authorities. *Id.* at  *10. Often, it will be unnecessary to document a file in great detail due to a familiarity with local conditions.  *Id.*  However, "where there is any doubt as to the comparability or worth of services, it will be necessary to obtain evidence in appropriate detail, supplemented as required by opinions from authoritative sources in the community."  *Id.*  Development of data and evidence must be specific.  *Id.*  "General descriptions are considered inconclusive evidence for the point-by-point comparison that is required.  If only a general description is possible or available, any doubt as to the comparability of the factors should be resolved in favor of the impaired individual."  *Id.*

The Commissioner concedes in his brief that the ALJ did not develop the record sufficiently under Test Two to establish that plaintiff's services were comparable to that of an unimpaired individual.  Defendant's Answer Brief, Filing No. 20 at 8 n.5.  The court agrees with the Commissioner's assessment.

The court acknowledges that in many instances, some of these issues would be remanded to the agency for further determination.  However, the court finds that the interests of justice require the disposition of this case as this matter has only now reached the court, approximately 7 years after the termination of disability insurance benefits, and approximately 15 years after the Social Security Administration's determination that plaintiff's disability ceased.  The court finds this length of time unacceptable.  No one, especially a person who is sick and disabled, should have to litigate an allegation of overpayments 15 years after the fact.  Such a time lag is very problematic and certainly not a testimonial to justice for litigants.

12

THEREFORE, IT IS ORDERED that the decision of the Commissioner is reversed. The Commissioner has not met his burden of showing that plaintiff engaged in substantial gainful activity from 1995 through 1998.  As a result, plaintiff was entitled to all payments received between 1995 and 1998.  A final judgment will be entered in this case in conjunction with this memorandum and order.

DATED this 18th day of June, 2010.

BY THE COURT:

s/ Joseph F. Bataillon
Chief District Judge

.

---

*This opinion may contain hyperlinks to other documents or Web sites.  The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites.  Likewise, the court has no agreements with any of these third parties or their Web sites.  The court accepts no responsibility for the availability or functionality of any hyperlink.  Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.